STEPHEN L. POTTER, JUDGE OF PROBATE, *vs.* ALBA HISCOX AND ANOTHER.

Where a guardian appointed in this state receives as a part of the property of his ward a note against a person living in another state, it is a part of his official duty to see to the security and collection of the note, and if it becomes worthless in consequence of his neglect to use reasonable care for its security or collection, he is liable on his bond.

Although the guardian would not be able to sue in another state under his appointment in this state, yet if the security of the note required the institution of legal proceedings, it would be his duty to cause them to be instituted in some

form, unless the expenses and risk made it inexpedient; and in determining whether the guardian has used reasonable care, the expenses and risk of such legal proceedings are to be considered.

In a plea in bar to a suit on the guardian bond, the allegation that the guardian had exhibited to the probate court and had had allowed an account of his "doings" as guardian, and had accounted for the note, does not necessarily imply that the probate court passed upon the *negligence* of the guardian by which the note had become worthless.

Where the verdict of a jury is inconsistent and repugnant, it does not follow that judgment is to be rendered for the defendant. A new venire should be issued.

DEBT, on a bond given by the defendants to a judge of probate for the faithful discharge by the defendant Hiscox of his duties as guardian of Dwight Hiscox, a minor. The bond was dated December 6, 1853. The case was tried to the jury in the superior court, before *Seymour, J.*

The defendants having craved oyer of the bond, set out its condition in their plea, and pleaded performance. The plaintiff replied, alleging as a breach of the bond the negligence of the guardian in not collecting a certain note of $1,689.65, a part of the property of the ward in the hands of the guardian, and the loss of the amount of the note by its having become worthless in his hands by reason of his negligence. The note was against one Freeman Hiscox, was dated November 7, 1853, and had come into the hands of the guardian at the time of his appointment; and it was alleged in the plea that at that time the said Freeman Hiscox was possessed of a large property, and was solvent and able to pay the note, and so continued for a long time after the appointment of the defendant Hiscox as guardian, but that before the ward became of age, which was on the 28th of May, 1859, the said Freeman Hiscox had become wholly insolvent, so that the note was at that time entirely worthless. The defendants filed two rejoinders to this replication, the first of which was a general denial, upon which issue was joined, and the second as follows:—

"That the said plaintiff ought not, by reason of anything in his said replication alleged, to have or maintain his aforesaid action against the defendants, because they say that, after the making of said writing obligatory, and after the said Alba

Hiscox had received said property as guardian as aforesaid, and before the commencement of this suit, and while the said Dwight Hiscox was still a minor, to wit, on the 3d day of June, 1854, the said Alba Hiscox, as guardian as aforesaid, exhibited to the court of probate for said district of Woodstock a true and just account of his doings as guardian up to that time, and well and truly accounted for said moneys and for said note of Freeman Hiscox ; and the said court of probate examined and investigated said account, the parties in interest being present and fully heard, and approved and allowed the same. And afterwards, to wit, on the first day of April, 1857, the said Dwight Hiscox then being a minor, the said Alba Hiscox, as guardian as aforesaid, exhibited to said court of probate a true and just account of his doings as guardian up to that time, and well and truly accounted for said moneys and for said note of Freeman Hiscox ; and said court investigated said account, the parties in interest being present and fully heard, and approved and allowed the same. And afterwards, and before the commencement of this suit, to wit, on the 2nd day of July, 1859, the said Alba Hiscox exhibited to said court of probate a true and just account of his doings as guardian as aforesaid, and well and truly accounted for said moneys and said note of Freeman Hiscox, the said Dwight Hiscox then being present before said court ; and said court of probate examined said accounts, the parties in interest being present and fully heard by themselves and counsel, and approved and allowed the same. Which said several decrees of the said court of probate are now in full force, having never been annulled, reversed, vacated or set aside. And thereupon the said Alba Hiscox then tendered and offered to deliver to said Dwight Hiscox, all and singular, the moneys, note and notes so remaining in his hands as guardian as aforesaid, which the said Dwight Hiscox then and there refused to receive. And the said Alba Hiscox here in court is now ready and willing, and offers to deliver to said Dwight Hiscox, all and singular the property aforesaid, if he will accept the same. All of which the defendants are ready to verify. Wherefore, &c."

To this rejoinder the plaintiff surrejoined, first by a general denial, upon which issue was joined, and secondly by the following special matter :—

" And the plaintiff says that he ought not to be barred and precluded from maintaining his action by reason of any thing alleged in the rejoinder of the defendants, because he says that, by a mutual agreement between the plaintiff and the defendant, made before the commencement of this suit, it was agreed that the liability of the defendant as guardian of the plaintiff, and his liability to account for the proceeds of the note mentioned in the plaintiff's replication, to wit, the note against Freeman Hiscox, should be decided and determined in a suit upon the probate bond mentioned in the plaintiff's declaration, and that whatever was done before the court of probate on the 2nd day of July, 1859, was done after the said Dwight Hiscox arrived at full age, and after the relationship of guardian and ward theretofore existing between said Alba Hiscox and said Dwight Hiscox had ended, and was done in pursuance of said agreement mentioned herein, and not otherwise ; and the questions arising upon the replication herein were not heard nor determined by said court of probate. All of which he is ready to verify ; wherefore, &c."

The defendants traversed this surrejoinder, and issue was joined upon it.

It appeared on the trial that Alba Hiscox was appointed guardian to Dwight Hiscox on the 6th of December, 1853 ; that the note in question, which was dated November 7th, 1853, and payable on the 26th of April, 1854, was the distributive share of the said Dwight in a debt due the estate of his deceased father from the said Freeman Hiscox ; and that at the time the note was given the said Freeman was, and ever since had continued to be, a resident of the state of New York, having no domicil in this state, and no property within the same so far as known. The defendant claimed and offered evidence to prove that said Freeman had never during that period been within this state, except on one occasion for a few days in the summer of 1854. It was admitted that in 1853, and for a part if not the whole of 1854, the said Free-

man was in good credit, and supposed to be a man of considerable property; but that in 1855 some change took place in his business, and he suspended payment, either wholly or partially. The plaintiff offered evidence to prove that the principal estate of the ward consisted in the note; that said Freeman, after his suspension of payment in 1855, continued to carry on business and owned property in New York and New Jersey, both real and personal, sufficient to pay or secure the note; and that the said Alba might with common care and diligence have collected the note, and that he was guilty of negligence in suffering it to remain without security and without the collection of either the principal or interest. The plaintiff also claimed, and offered evidence to prove, that the said Alba received security for the note in Connecticut, and that he afterwards wrongfully suffered the security to go back into the hands of the debtor. All these claims of the plaintiff were denied, and evidence in contradiction thereof was offered. The defendants also claimed, as matter of law, that the said Alba, as a guardian appointed in Connecticut, was under no obligation to pursue the said Freeman or his property in another state, and especially that he was under no obligation to commence legal proceedings in another state, and that he could not be chargeable with neglect for any supposed failure to commence such proceedings; and the defendants requested the court to charge the jury in conformity with their claims.

The court did not so charge, but instructed the jury on this point as follows:—

"It is unquestionably true that guardians appointed in one state have no power to sue as such, in their own names, in another state, but the duty of guardians, in respect to the personal property of their wards, is not confined to the state of their appointment. In this case the note was under the defendant's control as guardian, and he was bound to use reasonable care in keeping it properly secured and collecting it. Although the debtor resided abroad, the guardian ought to have made needful inquiries, and have kept himself advised as to the safety of the debt and continued responsibility of the debtor, and if the security of the debt made it proper that

legal proceedings should be instituted in another state, the guardian might properly be required to cause such proceedings to be instituted. The hazards and expenses of legal proceedings abroad may be taken into consideration by the jury, on the question whether the guardian acted with proper care and prudence. The rule of duty in the state and out of the state is substantially the same, to wit, that the guardian must conduct the business of his ward with the same care with which persons of ordinary prudence conduct their own affairs in like circumstances."

The jury found the first and third issues for the plaintiff, and the second for the defendants, and assessed the damages for the plaintiff at the full amount of the note and interest. The defendants thereupon moved for a new trial, and also filed the following motion in arrest of judgment and for judgment in their favor.

" And now the defendants within twenty-four hours after verdict, and before any judgment rendered thereon, move the court that judgment be rendered for the defendants in said cause, because they say that they pleaded in bar of said cause the said decrees of said court of probate, passed on the 2nd of June, 1854, the 1st of April, 1857, and the 2nd of July, 1859, respectively, and said jury have found by their said verdict that said decrees and orders of said court of probate were passed as aforesaid, and that the same are in full force and effect. Wherefore, and because said decrees of said court are a bar to the aforesaid action till the same are legally reversed or set aside, the defendants pray that no judgment be rendered for the plaintiff upon said verdict, but that judgment be rendered for the defendants."

This motion was reserved with the other for the advice of this court.

*Halsey* and *Cundall,* in support of the motions.

1. The decrees of the court of probate set out in the rejoinder, constitute a bar to the causes of action assigned in the replication. By statute the court of probate in appointing a guardian " shall take of him sufficient bond, and if the

minor have estate, a bond with surety, for a faithful discharge of his trust according to law, and obligating him to render his account to the court of probate." Rev. Stat., tit. 7, sec. 39. No action lies against the guardian until he has been called upon by the court of probate to account, and has failed to comply with the order. *Robertson* v. *Robertson*, 1 Root, 51. *Stillwell* v. *Mills*, 19 Johns., 304. The rejoinder alleges that he has fully accounted with the court of probate, that his account has been accepted and approved, and that the decrees of the court in relation thereto are in full force, not reversed or vacated. Any person aggrieved in the settlement of a guardian's account with his ward may appeal to the superior court, and persons who are of full age and present, or who have legal notice to be present, must appeal to the next term of the court and can not afterwards. Rev. Stat., tit. 5, secs. 64, 65. *Hiscox's Appeal from Probate*, 29 Conn., 561. The statute conferring the jurisdiction gives the remedy for a review, an appeal. Where a mode is pointed out, that mode must be pursued. There having been no appeal taken within the time limited by law, the decrees became fixed and conclusive upon the rights and liabilities of the parties. They can not be impeached collaterally in an action on the bond. *Bush* v. *Sheldon*, 1. Day, 170. *Rockwell* v. *Sheldon*, 2 id., 305. *Judson* v. *Lake*, 3 id., 318. *Goodrich* v. *Thompson*, 4 id., 215. *Penfield* v. *Savage*, 2 Conn., 388. *Edmond* v. *Canfield*, 8 id., 87. *Atwater* v. *Barnes*, 21 id., 237. *Harvard College* v. *Amory*, 9 Pick., 446.

2. It appearing from the rejoinder, and having been found by the jury, that the whole matter had been passed upon by the court of probate, that the ward was present and had been fully heard, that the decrees had never been reversed on appeal, and that the guardian was ready and willing and offered to account to his ward in compliance with the decrees before this suit was brought, judgment should be rendered for the defendants, notwithstanding the verdict of the jury upon the first and third issues; because, 1st., It is a legal bar to the causes of action alleged in the replication, as already shown; and 2d., The surrejoinder is no answer in law to the rejoin-

der. The surrejoinder attempts to avoid the bar, by alleging an agreement made between the ward and the defendant Hiscox, before the 2d of July, 1859, the date of the last decree, that the liability of the defendant Hiscox, as guardian, to account for the note mentioned in the replication, should be decided and determined in a suit upon the bond. But the record having been aptly pleaded as a bar, by a party having a right to avail himself of it, is absolutely conclusive. *Betts* v. *Starr*, 5 Conn., 550. *Kennedy* v. *Scovill*, 14 id., 61. *Holcomb* v. *Phelps*, 16 id., 127. The legal effect of a judgment or decree can not be destroyed in this manner. When relied upon as a bar, it has its effect as such. It can not be impeached or attacked collaterally, but only in a proceeding to reverse it. When a party for any cause has no longer a right to use it, he may be enjoined upon proper proceedings in equity. Further, it appears that this agreement was made prior to the decree, and so could not affect it. It also appears to have been made with Hiscox alone. It could not affect his surety. His legal rights could not be affected without his consent.

3. The charge as to the liability of the guardian upon his bond was erroneous. 1st. The bond is given with surety. The obligation is to protect against official misconduct, and to secure an account of the property of the ward. There can be no liability where there can be no official authority. 2d. The guardian appointed in this state had no authority to act as such in the state of New York. To enforce payment there of a debt due his ward, he must have been duly appointed guardian there. *Morrell* v. *Dickey*, 1 Johns. Cha., 153. *Williams* v. *Storrs*, 6 id., 353. *Holcomb* v. *Phelps*, 16 Conn., 127. *Upton* v. *Hubbard*, 28 id., 274. If payment had been made voluntarily by the debtor in New York, or if Hiscox had been appointed guardian there and had collected the money and brought it into this state, he would in either case have been liable upon his bond to account for it; but the claim here is, that he was guilty of official neglect in not collecting a debt due his ward from a resident of New York and whose property was there. As he could not have obtained either

payment or security *as guardian*, he could not be held liable upon his bond for not obtaining either.

*Cleveland* and *Phillips*, contra.

1. The motion in arrest, which is founded entirely upon the supposed effect of the decrees of the court of probate, ought not to prevail. Courts of probate have no power to settle the rights of the parties under a guardian bond after the ward is of age. 1 Swift. Dig., 49. *Norton* v. *Strong*, 1 Conn., 65. *Spalding* v. *Butts*, 5 id., 427. The case of *Nettleton's Appeal*, 28 Conn., 268, does not overrule these decisions, and was based upon special provisions of the statute with regard to conservators. If they have the power, yet they can not conclude the ward upon a claim founded on the negligence of the guardian. As to this the ward is entitled to a trial by jury. But here the court of probate has not undertaken to pass upon the question of the guardian's liability for the loss of the note by his negligence. The court merely allowed his account for services and disbursements, and did not consider, even if it had the right to do so, the claim of the ward for damages. This is not only to be presumed to be the fact, since the probate proceedings do not show that this matter was passed upon, but is clearly to be taken as the fact when the jury, by their finding for the plaintiff on the first issue, have found that by the agreement of the parties the question of the guardian's liability for the note was to be made in a suit on the bond, and that the settlement of the account in probate was made after and subject to this agreement. The defendants' rejoinder does not aver that the point here in issue was made before the judge of probate, and it therefore is not only not to be presumed that it was so made, but the plea by reason of its want of this averment is bad as a plea in bar of the present suit. In such a plea nothing is to be left to inference, but the matter by which the plaintiff is sought to be estopped is to be alleged with precision, and it must appear that the exact point now made was before decided. *Fairman* v. *Bacon*, 8 Conn., 424. *Crandall* v. *Gallup*, 12 id., 365. *Kennedy* v. *Scovill*, 14 id., 61. *Eastman* v. *Cooper*, 15 Pick., 276. 1 Greenl.

Ev., § 528. The agreement of the defendants that the question of the guardian's liability should be made in the suit on the bond, is not only one which the court should enforce as an agreement, but is itself an estoppel on the defendants against setting up the probate decrees in bar, as the ward has been induced by the conduct of the defendants in making such a stipulation to neglect to make the claim before the probate court on the settlement of the guardian account. It is a clear case for the application of the principle of an estoppel in pais. 1 Greenl. Ev., § 207.

2. There is no error in the charge of the court. Choses in action belong where the owner resides, and this note was legally a part of the property of the ward that came under the charge of the guardian in his official capacity, and his conduct with regard to it was covered by his bond as much as if the debtor had resided within the state. It was the duty of the guardian to collect the note, and for a long time after he received it it was perfectly collectible. It is no reply to say that he could not have sued in New York under his appointment in this state. It might not have been necessary to sue. If it had been the suit could have been brought in the name of the ward by his next friend, as the note was payable to him ; or if necessary he might with little trouble or expense have obtained an appointment in the state of New York. He knew where the debtor resided, and his circumstances, when he accepted the trust, and he knew that this note constituted the great bulk of the ward's estate. He was bound to take reasonable care of it, and had no right to be negligent with regard to it, as the jury have found that he was. *Perkins* v. *Stone*, 18 Conn., 270. *Wills' Appeal*, 22 Penn. S. R., 325. *McLean* v. *Hosea*, 14 Ala., 194. 2 Kent Com., 230.

DUTTON, J. This action is brought on a guardian's bond to recover the amount of a note which had been distributed to a minor, and which he claims was lost through the neglect of the guardian. The principal difficulty in the case arises from the state of the record. The defendants pleaded general performance. The plaintiff in his replication sets out the real

cause of action, alleging specially the neglect of the guardian in not collecting the note, and that the guardian had never accounted to the court of probate nor to himself for the note, and had never paid over to him the amount of it. The defendants rejoin in the first place, that the facts alleged in the replication are not true. This issue involved all the questions that were raised on the record in the case. For if, as was claimed, the record of the court of probate with the accompanying evidence proved conclusively that the guardian had fully accounted, the defendants must have prevailed on this issue. Instead of adopting this course the defendants put in a second rejoinder, alleging that twice during the time of the guardianship the guardian exhibited to the court of probate a just and true account of his guardianship to that time, and well and truly accounted for the note in question ; and that after the plaintiff came of age he again exhibited to the court of probate a just and true account of his doings as guardian, and well and truly accounted for said note ; that this was in the presence of the plaintiff, and that the court of probate examined and investigated said account and allowed the same, and that these decrees of the court of probate were still in full force. The plaintiff in one surrejoinder took issue on these allegations, and then entered another, alleging that by consent of parties the question of the neglect of the guardian as to this note was not tried or heard by the judge of probate, on which the defendants took issue. Whether the rules of pleading would allow such a two-fold surrejoinder, we are not called upon to decide, as no exception was taken to the proceeding, and we do not consider the issue formed on the last surrejoinder material to the decision of the case. The jury found the first issue for the plaintiff, and the second for the defendants. In other words they found that the guardian had been guilty of neglect in not collecting this note, that he had never accounted to the court of probate for the proceeds of the note, and had never accounted to the plaintiff nor paid over to him the proceeds of the note. But they further found that the guardian had accounted to the court of probate for his doings as guardian and for this note. The record shows that

there were no questions as to the admissibility of evidence raised in the case. Each party was permitted to sustain his allegations by such evidence as he introduced. When the plaintiff offered evidence to prove that he had lost the note in question through the culpable neglect of the guardian, the defendants did not attempt to estop him by the previous proceedings of the court of probate. So that the simple question is, what judgment ought to be rendered on the facts found by the jury.

The defendants claim, in the first place, that no judgment can legally be rendered against them, because they say the verdict of the jury taken together is inconsistent and repugnant in itself; that it finds in the first place that the guardian did not account for the note, and then that he did account for it. They claim therefore a decision of the case in their favor.

If there was such inconsistency and repugnancy, it would be no ground for rendering a judgment for the defendants. It would show merely a mis-trial, and the case would necessarially be sent back to another hearing.

Whether there may not be an inconsistency to some extent, we do not deem it necessary to scrutinize the record closely to ascertain. The jury have found the second rejoinder of the defendants true, and they are entitled to the benefit of all the allegations in it which they have distinctly and fully made, and no more. If they have not fairly and unequivocally answered the allegations in the plaintiff's replication, it is their own fault, or it was because they could not. The presumption is against the pleader, and nothing is to be inferred in his favor by argument or implication. The plaintiff distinctly alleged that the note in question had been lost by the negligence of the guardian, and that he had not accounted to him for the avails of it after he had come of age and had not paid them over to him. The defendants in answer to this say that the guardian exhibited to the court of probate an account of his " doings " as guardian. Does this necessarily embrace an account of what he neglected to do? We can not infer from this allegation, or from the allegation that the guardian had accounted for the note, that the attention of the court of

probate was directed at all to the misconduct or want of care of the guardian by which the note had become worthless in his hands. Again, one great object of a bond is to secure to the ward, after he comes of age, the receipt of his property from the guardian. The plaintiff alleges that the guardian never paid the avails of this note over to him. The defendants do not answer this allegation at all. They do not say that he ever delivered or offered to deliver the note itself to the plaintiff. If without any fault on his part the note could not have been collected, this would have been his proper course, and would have saved him from liability. The rendering a correct account to a judge of probate, and having it approved by him, is not all that is required of a guardian. The court of probate does not ordinarily find or record the fact that the guardian has delivered the property over to the ward. He adjusts the account, and ascertains the balance or amount of the property left in the guardian's hands. The guardian then delivers this over and takes a discharge from his ward, who being then of full age is competent to give it. If all the allegations in the surrejoinder are taken most strongly in favor of the defendants, the replication in this respect is not answered.

We see nothing objectionable in the charge of the judge. It would not answer to allow a guardian to retain in his hands, professedly as such guardian, the note of his ward due from the inhabitant of another state, and have the charge of it, so that no one else could collect it, and then avoid all responsibility for its loss on the ground that he could not act officially out of the state. We are not sure that any one acting in a private capacity and pursuing such a course could not be held liable.

We see no ground, either for a new trial, or for an arrest of the judgment of the superior court.

In this opinion the other judges concurred.